## KAPPLER *v.* SUMPTER.

ATTORNEY AND CLIENT; SUBSTITUTION OF ATTORNEYS IN A PENDING CAUSE; DISCONTINUANCE; PARTIES; APPEAL AND ERROR.

1. A party to a suit may change his attorney when he sees fit, assuming the responsibility, of course, for any breach of his contract.

2. It is within the province of the court to entertain a motion in a pending suit for the substitution of attorneys, and it may grant it upon or without condition; and where it is possible, under the circumstances of the particular case, to protect the former counsel by imposing some condition for that purpose, it seems that courts usually exercise their discretion to do so.

3. Even if an attorney has a lien for his fees upon land which his Indian clients may receive through their restoration to the rolls as members of Indian tribes as a result of a pending proceeding by mandamus against the Secretary of the Interior, such lien cannot be enforced in such proceeding by any order therein, or be taken away by the granting of a motion made by another attorney, in the names of the relators, to discontinue the proceeding, on the ground that otherwise the first attorney would proceed to have judgments entered, and render the relator liable for fees.

4. Where, in a mandamus proceeding by a number of Indians against the Secretary of the Interior, to compel him to restore their names to the rolls of certain Indian tribes, a motion by some of the relators, made by an attorney other than the original attorneys of record, to discontinue the proceeding as to such relators, and a motion by another relator to vacate a judgment in his favor, both motions being based upon the ground that such attorneys had no authority to act for the relators, were granted over the objection of such attorneys, and they appealed from such orders, but no bill of exceptions was set-

tled, a motion by the appellees to dismiss the appeal on the ground that appellants were not parties to the action, and because there was no bill of exceptions in the record, was *granted* and the appeal was dismissed. (Distinguishing *Arnold v. Carter,* 19 App. D. C. 259.)

No. 2001.   Submitted May 5, 1909.   Decided June 1, 1909.

HEARING on a motion to dismiss an appeal.   *Granted.*

The COURT in the opinion stated the facts as follows:

This was a special appeal that was granted on application, from an interlocutory order, entered on motion in a pending action at law in which the appellees were plaintiffs and the Secretary of the Interior defendant.

The appellees have moved to dismiss the appeal on the ground that the appellants, Charles J. Kappler and Charles H. Merillat, were not parties to the action in which the order was entered, and are not, therefore, entitled to appeal therefrom. They have, in addition, moved to dismiss or affirm, because there is no bill of exceptions in the record, and, therefore, nothing on which to base a review of the order.

It appears, generally, in the record that appellants, as attorneys for one Goldsby, had previously brought an action for him against the Secretary of the Interior, praying a writ of mandamus to compel him to vacate an order striking Goldsby's name from the approved roll of the members of the Chickasaw Nation. A judgment was obtained, granting the writ, which was affirmed by this court November 29, 1907. *Garfield* v. *United States,* 30 App. D. C. 177. On further appeal to the Supreme Court of the United States, the judgment was again affirmed on November 30, 1908. 211 U. S. 249, 53 L. ed. 168, 29 Sup. Ct. Rep. 62. Many other names of Indian claimants had been stricken from the rolls at the same time with Goldsby's, and for the same cause. The decision in his case determined the question of their right to restoration.

On December 11, 1907, appellants filed the action in this case on behalf of sixty of those claimants against the Secretary,

to compel their restoration to the rolls also. The appellees, Jim Andy Sumpter, Scott Sumpter, and Jacob D. Sumpter, were among the plaintiffs. While the Goldsby Case was depending on the last appeal, June 13, 1908, a stipulation was filed in said cause by which the parties agreed that it should abide the final result of Goldsby's Case. Pursuant to said agreement, on January 8, 1909, judgment was entered directing the restoration to the rolls of each of the plaintiffs, save and except Jim Andy and Scott Sumpter. Prior to this time, on December 19, 1908, one William W. Wright, as attorney for said Jim Andy and Scott Sumpter, and for Jacob D. Sumpter, had filed separate petitions for mandamus to compel their restoration, which actions were still depending. The reason for not entering judgment for said Jim Andy and Scott Sumpter in the general action was to give said Wright an opportunity to file a motion in the case. On January 11, 1909, said Wright, on their behalf, filed a motion to withdraw their names from said general action. The motion alleged that appellants and their associate, James K. Jones, since deceased, had no authority to represent said Sumpters; that said Wright was their only authorized attorney; and that, if plaintiffs were not permitted to withdraw from said cause, appellants would have judgments entered for them therein and render them liable for fees in said cause. The motion was supported by an affidavit of said Wright, to which was attached a contract dated January 29, 1908, with Wilbourne and Dickinson, attorneys, authorizing action in the name of said Jim Andy and Scott Sumpter, and agreeing upon a fee of $500 therefor. This was executed by Jacob C. Good, as guardian of said parties, who were represented as minors. Another, dated January 20, 1908, was attached, between the parties and Howe and Wright. This was signed for the minors by their father, Jacob D. Sumpter, who executed the same on his own behalf also.

On January 14, 1909, Wright filed another motion in the name of Jacob D. Sumpter, asking to have the judgment in his favor vacated, alleging substantially the same grounds as set up in the first motion. This was also supported by an affidavit of

Wright. Another affidavit was made by Jacob C. Good, as guardian of Jim Andy and Scott Sumpter, alleging that he had retained Wright to represent his said wards, and had not authorized appellants to do so.

In answer to these motions, appellants filed the following affidavits: First, one by Chilion Riley, an attorney of Duncan, Oklahoma, to the effect that he had been retained by Jacob D. Sumpter to represent him, and that he had retained appellants as his assistant counsel. Attached to this was a copy of a contract employing said Riley, dated August 14, 1907. This was signed for Jacob Sumpter, by John Sumpter, who, as stated in the affidavit, was the father and agent of Jacob. Second, the affidavit of one of the appellants, in which he stated that they had been employed by Riley under said contract, and had filed the action in accordance therewith; that the petition had been forwarded to Riley, and had been verified by one of the Sumpters; that, by reason of the decision in the Goldsby Case, which had been prosecuted by the appellants, nothing remained to be done, as the Secretary was now willing to restore each person to the rolls. Third, an affidavit by Charles M. Feckheimer, an attorney of Chickasha, Oklahoma, to the effect that, in June, 1907, Jacob Good, as guardian of Jim Andy and Scott Sumpter, had employed affiant to secure their restoration to the rolls, and that he had associated appellants with him for that purpose, said Good being informed of that fact. Fourth, another affidavit by one of the appellants, giving a history of the proceedings and facts tending to show that the question had been settled in the Goldsby Case before Wright took any action whatever, and also alleging authority and good faith in the proceedings taken by appellants. This affidavit concluded as follows: "Deponent is willing, under proper proceedings, that these matters may be investigated and the truth thereof determined." We are informed, on the argument of the motion, that no investigation was had by the court, as requested, and that the matter was determined on the affidavits. No bill of exceptions was taken, however, and the record only shows the orders of the court, made on each motion which was granted. Jim Andy and

Scott Sumpter were granted leave to withdraw their names from the case, in order that their right may be adjudicated in the separate actions begun for them by Wright. The judgment in favor of Jacob D. Sumpter was vacated. The court, it seems, did not undertake to pass upon the question of priority of contracts, or the right of appellants to bring the action, but simply recognized the right of the parties to control the litigation, and substitute other attorneys for the appellants. It is from these orders that the appeal was allowed.

*Messrs. Sleman & Lerch* for the motion.

The appellants, *Messrs. Kappler & Merillat,* in proper person, opposed.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

While it is difficult to perceive what benefit could possibly accrue to the parties to the action by this proceeding on their behalf, because, as to one, the judgment had been entered giving him all that he sought, and as to the other two, judgment was ready to be entered upon the agreement, still it was their right to change their attorneys in the case and resort to other proceedings if they preferred to do so. A party to a suit can change his attorney when he sees fit, assuming the responsibility, of course, of his breach of his contract with his former attorney. *Re Paschal (Texas* v. *White)* 10 Wall. 483, 496, 19 L. ed. 992, 997.

It is within the province of the court to entertain a motion for substitution, and it may grant it upon or without condition. Where it is possible, under the circumstances of the particular case, to protect the former counsel by imposing some condition for that purpose, it seems that courts usually exercise their discretion to do so. In the absence of a bill of exceptions it is impossible to say whether the court could have imposed any condition upon the parties in favor of the appellants, but the

situation would seem to show that it could not have done so effectually. Appellants were officers of the court, in the performance of their representative duties, and, as such, were subject to the jurisdiction, inherent in the court, to entertain this summary proceeding. They could not be made parties to the action thereby. If they had been ordered to deliver up money in their possession upon which they claimed a lien for collection, or to surrender money paid as fees, or collateral security, a difficult question would be presented. From such an order, being final as to them, they might possibly have appealed as a matter of right. See *Arnold* v. *Carter,* 19 App. D. C. 259. That was a proceeding in equity, in the course of which the court ordered an attorney and trustee to pay over to parties money in his hands in which he claimed an interest, and for that reason was distinguished from the case of *Hallam* v. *Oppenheimer,* 3 App. D. C. 329, which denied appeal to trustees who had no direct interest involved in the decree. The order of the court was an incident of the orderly conduct of the case. It recognized the right of litigating parties to discharge their counsel and substitute others, regardless of contract. It could not and did not attempt to determine the right of appellants to redress for the breach of contract of employment, or for services actually rendered. For these they have their remedy.

It is argued by appellants that, by the terms of the act of Congress, they are entitled to a lien upon the land which the parties may receive through their restoration to the rolls as members of the Indian tribes, and which they may lose the benefit of under this order. Granting the existence of such a lien, it could not be enforced in the pending action by any order therein; nor could it be taken away.

It seems that all such contracts with Indians are subject to the supervision and allowance of the Secretary of the Interior. All of the attorneys will probably have to go before him for a final approval and settlement of their contracts and claims for fees. And there is nothing in the orders complained of that would preclude inquiry by him into the several contracts of the attorneys, and the allowance of the same as may appear fair

and just, to the full extent of the discretion committed to him by Congress in such matters. But, if the Secretary have no such discretionary power under the law, the parties will not be deprived of their remedies in the courts having jurisdiction in the premises.

It is unnecessary to discuss the other grounds of the motion. For the reasons given, the appeal will be dismissed with costs.

*Dismissed.*

A motion by the appellants for a rehearing was overruled June 4, 1909.