## *In re* HERMAN.

### *(District Court, D. Washington, E. D.* April 30, 1892.)

1. ATTORNEY—DISMISSAL BY RECEIVER.

The receiver of an insolvent bank may at any time dismiss an attorney employed by him, regularly or otherwise, to prosecute claims of the bank, and employ another in his place, whom the court will, by order, substitute in the place of the dismissed attorney, except as to such cases as the latter may have commenced and finished.

2. SAME—SECURITY FOR SERVICES RENDERED.

A contract having been entered into between the receiver and the attorney that the latter should receive the attorney's fees provided for in the notes he was employed to collect, the court will not direct the substitution of another attorney in unfinished cases, until the receiver deposits the amount of the attorney's fees reserved in the notes as a security to the dismissed attorney for such services as he may have rendered.

At Law. Petition by Herman L. Chase, receiver of the Spokane National Bank, to change attorneys. The application was resisted by Henry M. Herman, the original attorney. Granted in part and denied in part.

*F. T. Post,* for petitioner.

*H. M. Herman, in pro. per.*

HANFORD, District Judge. The petitioner, Herman L. Chase, as receiver of the Spokane National Bank, is the plaintiff in a number of actions commenced in this court for the collection of moneys due to said bank, in all of which cases Henry M. Herman appears as the attorney of record for said plaintiff. The court is now asked to exclude him from further appearing in said cases, and to substitute F. T. Post as the attorney for the plaintiff, and also to require said Herman to surrender to the petitioner all the notes and securities and money which he has obtained possession of by means of his position as an attorney of this court assuming to represent the plaintiff in said cases. In his petition the receiver alleges that Herman has not been employed by him, and that he does not desire said attorney to represent him, and sets forth a telegram from Hon. E. S. Lacey, comptroller of the currency of the United States, saying that he (the comptroller) is not willing to recognize Herman as an attorney for the receiver, and that he has not been em-

ployed by the comptroller's authority. As an explanation of the situation, the petition states that Hon. P. H. Winston has been attorney for the receiver in all matters connected with the business of the bank, and that, as he "verily believes, said Herman was employed by said Winston to assist him in some of said litigation." It is not pretended that Judge Herman has been paid for his services in the cases referred to, or that payment has been tendered; and the directions in said telegram from the comptroller, as well as the attitude of the petitioner in this proceeding, evince an intention to contest his right to receive any compensation. It is proposed to deposit in court such reasonable sum as the court may require to cover his claim, and then to frame issues to be thereafter tried for the purpose of testing his right to receive compensation for the services rendered. From the records in the several cases enumerated in the petition I find that in all of them Judge Herman has from the beginning appeared as the only attorney for the plaintiff. In each case there is a complaint signed by him as attorney for the plaintiff, and verified by Mr. Chase. Some of these cases were commenced in the month of May of last year, and the others were commenced in August and September. The list includes 34 cases, and in 25 of them final judgments in favor of the plaintiff were rendered before this proceeding was commenced; one was settled and dismissed, and the other eight are now pending. The receiver shows by his testimony given upon this hearing that he has received the fruits of Judge Herman's labor in these cases. In some of those pending, as well as in several which have proceeded to judgment, payments have been made to him by the respective defendants.

Consideration for the rights of the parties whose interests are represented by this receiver requires me to hold that in all pending cases in which further proceedings or some further action of the court may be necessary, the receiver has the right to dismiss his attorney at pleasure after payment of lawful charges for services rendered, and to employ a new attorney to conduct such further proceedings without assigning any reason for his action; and I hold that whether Judge Herman was or was not regularly employed as the attorney for the receiver, he can be excluded from further appearing in the several cases mentioned which are unfinished, including those in which judgments have been rendered which have not been satisfied, upon payment being made to him for his services, or security given therefor. But as to the cases which are entirely finished, or in which nothing remains to be done except to settle the question at issue between him and the receiver as to his compensation, there is no reason for the further appearance of an attorney, and as to those cases the order for the substitution of attorneys prayed for by the petition will be denied.

In deciding whether to grant or deny the prayer of the petitioner as to pending cases, it is necessary for me to pass upon the question whether security for compensation to Judge Herman for his services as an attorney in said cases by a deposit in the registry of the court, as suggested in the telegram from the comptroller, ought to be exacted. As to this

question I hold that, if the attorney is entitled to compensation, he is also entitled to have his right thereto fully protected by the court before he can be by a compulsory order divested of authority to control the conduct of the cases in which compensation has been earned. Judge Herman is an attorney of this court in good standing. He is well known throughout the United States as an eminent lawyer and as a writer of law text-books. It is not alleged as a reason for dismissing him that he is incompetent or dishonest, or that he has been guilty of negligence, lack of courtesy towards his client, or any kind of misbehavior. He has rendered valuable services in these cases, and the creditors and stockholders of the insolvent bank have received the benefits thereof. Unless he can be regarded as a mere volunteer or intruder into the business of the receivership, or as an employe under an express contract to work without compensation, he is certainly entitled to be paid for the work which he has done. Was he employed by the plaintiff? The testimony upon which the decision of this question depends may be summed up in brief as follows: Judge Herman has not only appeared as the attorney for the plaintiff in this court in the several cases above referred to, but has also appeared as attorney for the plaintiff in a number of cases in the United States circuit court of this district, and in the courts of the state of Idaho, and in the United States circuit court for the district of Oregon; the whole number of cases in which he has so appeared being over 40 in number, and the aggregate amount involved being fully a quarter of a million dollars. All of said litigation has practically terminated without loss to, or sacrifice on the part of, the bank. The receiver has, from time to time, recognized Judge Herman as the attorney having actual management of the cases mentioned, by placing in his hands the promissory notes and securities upon which suits were founded, and by going to his office to verify pleadings in a number of instances, and has frequently counseled with him, and received advice concerning matters involved in the pending litigation. If in fact the attorney by whom these cases have been commenced and conducted thus far, and who has been thus recognized and counseled with, was not employed by the receiver, the question, why has not the fact been brought to the attention of the different courts in which he has so appeared before the termination of the litigation? is very pertinent. And it is not satisfactorily answered by the pretense that his relationship as an attorney for the plaintiff in the several cases was unknown to the receiver, or unknown to the comptroller of the currency, for it is impossible that the ignorance of these officers alleged in the petition could have continued while the receiver was acting in concert with him.

I regard the receiver's testimony on this point and the statements in the comptroller's telegram as simply incredible. The receiver claims, however, to have understood that Judge Herman was simply acting in place of Col. Winston, who was regularly employed as the receiver's attorney, and that, under a contract between the comptroller of the currency and Winston, the latter is obligated for the compensation to be paid him to perform all the duties of an attorney himself, or procure

another attorney to do so, and to bear the entire expense occasioned by the employment of a substitute. That contract, however, is before me as a part of the evidence introduced upon this hearing, and upon its face shows that it will not bear such a construction. It provides for a *per diem* as compensation for services which Col. Winston should render in counseling with the receiver, and in the conduct of suits and actions, and that he should at his own expense engage an attorney to act in his place when absent for the purpose of counseling with the receiver. Part of the contract between Col. Winston and the comptroller is to be found in the correspondence between them, from which it affirmatively appears that the formal written instrument was signed with the distinct understanding that the same was made subject to future modifications. And from the undisputed testimony it appears that, after the affairs of this receivership had progressed for a few months, litigation in which the bank became involved was of such magnitude that Winston was unable to carry it through alone, and it became absolutely necessary to employ another attorney. This was well known to the receiver, and was also communicated directly to the comptroller, and a proposition to employ additional counsel was made to him and assented to. He authorized the employment of a firm chosen by Col. Winston, but for some reason no arrangement was concluded with said firm. Thereafter a definite proposition to employ Judge Herman in certain cases which were mentioned, and to pay him a specified compensation, was made. Owing to delay in receiving a response from the comptroller to this last proposition, which was made by Col. Winston in a letter to the comptroller, and the necessity for prompt action in said cases, Judge Herman, at the request of Col. Winston, undertook these cases, and prosecuted them with the full knowledge and co-operation of the receiver. According to the testimony of both Col. Winston and Judge Herman, it was distinctly understood and agreed to between them and the receiver that the compensation which Judge Herman would claim in the collection cases brought in this court was to be the percentage provided for in the several notes sued upon which the makers promised to pay as attorney fees in case of action brought, in addition to principal and interest. It was distinctly understood that the receiver should have the full amount of all moneys collected as principal and interest, and that the attorney's compensation should be the amount provided for in the notes to be collected in each case from the debtor. The testimony of these two witnesses is opposed only by that of Mr. Chase, who denies that he ever assented to such an arrangement, and he claims that he has always insisted that the attorneys' fees stipulated for in the notes should be collected for the benefit of the bank, the same as the principal and interest. He has, however, participated in the prosecution of suits in this court upon said notes to collect the principal and interest and attorney's fee. His duty as an officer of the government appointed to transact the business of an insolvent bank required of him not only diligence to prevent loss to creditors and stockholders of the bank, but also fair treatment of its other customers, and he could not

consistently with his duty represent to the court that an expense had been incurred for attorneys' fees in proceedings to collect the notes, and thereby induce the court to award him judgments including such expenses, if the same were not actually incurred. This court certainly would not knowingly have allowed the receiver to oppress the debtors of the bank to the extent of making them pay the principal and interest of their notes, and any sum for expenses of collection in addition to the amount of the actual expenses in each case. The amounts awarded for attorney fees in the several judgments rendered belong to the attorney, and if by any arrangement he has precluded himself from lawfully claiming the same the amount should be refunded to the debtors if collected, or credit should be given for the same upon the judgments if remaining uncollected. The testimony of Mr. Chase in this particular is not only contradicted by two witnesses, but it shows that he is endeavoring to act unfairly towards his attorney, or towards the defendants in the several cases mentioned, and because of such attempted unfairness on his part, as well as the number of witnesses against him, I feel constrained to reject his statements, and to find as a fact that the agreement was made as sworn to by the other witnesses.

Upon consideration of all the evidence, I find that Mr. Chase has from the beginning of each of the actions had definite and accurate information as to the relationship of Judge Herman as his attorney in said cases; and, whether there was any definite contract of employment in words or not, the services were rendered under such circumstances as to raise an implied promise to pay reasonable compensation therefor. I cannot in this proceeding adjudge as to the amount due Judge Herman for his services as the plaintiff's attorney, but he is at least entitled to all attorney fees collected or to be collected from the debtors in these collection cases. I will therefore order that as to cases which are still pending Judge Herman surrender to the petitioner the notes and all securities which he has, as soon as the receiver shall deposit in the registry of this court, to await the further action and determination of the court, an amount equal to the attorney fees stipulated for in such notes. As to the money in his hands which he has collected from the bank I will make no order, but will let it remain until a final accounting and settlement between him and his client can be had. The question as to the amount due from either as compensation for services rendered for which the receiver is liable, or on account of moneys collected by the attorney and due to his client, can only be determined by the court in a case regularly commenced and prosecuted by one party against the other, so that an issue can be framed and a judgment rendered in the usual way. I will deny the receiver's application as to all finished cases,—that is to say, those cases in which the record shows the judgments rendered to have been fully paid,—and grant the petition as to the pending causes upon compliance upon the part of the receiver with the conditions imposed as to the deposit into court as above specified.