## JOHN GRIFFITHS & SON CO. v. UNITED STATES.

### TINKOFF v. JOHN GRIFFITHS & SON CO.

#### No. 5033.

Circuit Court of Appeals, Seventh Circuit.
June 27, 1934.

Rehearing Denied Oct. 1, 1934.

Paysoff Tinkoff, of Chicago, Ill., pro se.

John G. Campbell, Herman A. Fischer, and Carlton L. Fischer, all of Chicago, Ill., for appellee.

Before ALSCHULER, SPARKS, and FITZHENRY, Circuit Judges.

FITZHENRY, Circuit Judge.

Appellant, an attorney and public accountant, specialized in income tax matters. He represented appellee, John Griffiths & Son Company, a corporation, John Griffiths, and his son George Griffiths, individually. He had considerable business for them with the Collector and Commissioner of Internal Revenue and later before the Board of Tax Appeals. The particular suit out of which this appeal grows was an action by the corporation against the United States to recover an income tax refund for an overpayment of the corporation's taxes for the year 1918. The suit was originally commenced against Mabel Reinecke, Collector of Internal Revenue. When that suit was heard in the District Court, it was dismissed for the reason it should have been against the Collector who received the payment sought to be recovered, or the United States. The present suit was instituted March 8, 1932.

For reasons satisfactory to appellee, it was desirous of terminating so far as possible all relations with, and representation by, appellant. A conference was held and an agreement of final settlement entered into, whereby appellant was to be paid $15,000 in full, final, and complete settlement of all matters between the parties, except two certain contracts. The money was paid and the contract of settlement embodied in the receipt given for it, which was written undoubtedly by appellee, upon the advice of counsel, and dated September 23, 1932. It was executed by appellant on September 27, 1932, and is set out in full in the margin.[1]

Appellant met John Griffiths some time thereafter and called his attention to the fact that through an oversight the contract of set-

---

[1] September 23, 1932.

Received of John Griffiths & Son Company, a corporation, the sum of $15,-000.00 (Fifteen Thousand) Dollars being payment in full of all claims and demands of every kind and nature to date. It is expressly understood that we are to render no further services of any kind or character on behalf of John Griffiths & Son Company after this date except under the terms of written contracts expressly covering the services to be performed, and that we have no existing contracts with said corporation for services except the following written contracts:

(1) Contract Accepted January 19, 1931, relating to John C. Ruettinger Commissions as at May 17, 1930, it being specifically understood that the Representation by the Undersigned shall continue in behalf of John Griffiths & Son Company to determine the Commissions due the Estate of John C. Ruettinger, as at May 17, 1930, up until the final settlement of this amount by Conferences without suit, or up until suit is brought, whichever is earlier.

(2) Contract to be executed between John Griffiths & Son Company and Undersigned relating to Representation before Chicago Office only of Bureau of Internal Revenue regarding the 1929, 1930, and 1931 Tax Liability of John Griffiths & Son Company, per Deficiency letters dated August 17th, 1932, and specifically excluding the Potter Palmer transaction from such Representation. Said consideration for this Contract to be Fifteen Hundred ($1500.00) Dollars.

(Signed) Paysoff Tinkoff,
Attorney at Law.

Paysoff Tinkoff Certified
Public Accountant Doing
Business as Paysoff Tinkoff
& Son Co.

By (Sgd.) Paysoff Tinkoff.

tlement made no provision for his services in the present case, No. 40,535, and it should be taken care of. Appellant testified that John Griffiths said to go ahead and take care of the case and the oversight would be attended to. A short time thereafter John Griffiths notified appellant that any contract for handling the present case should be in writing and to prepare a proposed contract and submit it. Such a proposed contract, in the form of a letter, with a space just below appellant's signature on it for acceptance, was prepared, under date of December 12, 1932, and sent to appellee. Appellant's proposition was not accepted by the corporation. Under date of January 16, 1933, appellee prepared a proposed contract, in the form of a letter, with a space at the bottom of it for the acceptance of its provisions by appellant. In this letter appellee agreed to employ appellant in this particular case and allow him a contingent fee of 25 per cent. of the amount recovered, but insisted upon retaining supervision over the expenses to be incurred in the prosecution of the case.

At the conclusion of appellant's letter, being his proposed contract, appellant told the corporation that the acceptance of his proposition "must be reduced to writing, in accordance with our Final Settlement made on September 27, 1932, that any and all future services of the Undersigned will be in writing," meaning, of course, that no service should be rendered by appellant except upon the authority of a written contract. Appellee, at the conclusion of its counter proposition, had these words: "You will have no claim for services in connection with this suit unless and except to the extent that you may become entitled to a fee under the above arrangement."

While the record in this case is substantial, considering the size of the case, the assignments of error voluminous, and the discussions of counsel in their briefs and arguments cover a wide latitude, there is but one question involved in this appeal, and that is: Was the contract dated September 23, 1933, modified so as to include the employment of appellant in this case, or was a new contract employing appellant entered into?

The evidence discloses that it is established beyond any possibility of question that no new written contract for the employment of appellant in this case, or for the modification of the contract of settlement, was made, and this is substantially admitted by appellant. His claim for employment after the final settlement is based upon a personal conversation which appellant had with John Griffiths, the president of the corporation.

Appellant testified that he had met John Griffiths and told him that through an oversight this case had been overlooked in the contract of final settlement. Whereupon, Griffiths said that if there had been an oversight, it would be corrected, to go ahead and take care of the case. He further testified that a short time thereafter he again met Griffiths, who notified him that if he was going to represent the corporation in this case, he would better prepare and submit a form of contract. This was done by appellant, but it was never accepted by appellee. It contained a clause wherein it was acknowledged that under the contract of final settlement any additional employment would have to be in writing. Some days thereafter a counter proposition was made by appellee to appellant, who neither accepted nor acknowledged its receipt.

The relations show that as between the parties under their own agreement there could and would be no further services rendered chargeable to appellee except by contract in writing. Under these circumstances, the court was fully warranted by the evidence in finding and holding that at the time in question there was nothing due and owing from the corporation to appellant.

Complaint is made as to the character of the proceedings. Admittedly, where an attorney is employed upon a contingent fee and the clients desire to terminate the relations, the proper practice is to set a motion for substitution of counsel down for a hearing, notify the attorney of record of the motion, ascertain all that is due and owing him by reason of his services and expenses, and provide for the payment of his compensation, as a condition precedent to the allowance of the order of substitution.

This motion undoubtedly was presented to the court upon proof of notice to appellant, who did not appear, and the order was made. Then came the motion of appellant to set aside the order and ascertain the amount due appellant for his services and expenses before passing upon the motion for substitution. The court denied that part of the motion to set aside the order of substitution, but did retain jurisdiction to hear the evidence upon any and all claims and demands of appellant. So that as full a consideration was had of appellant's rights and claims as though the issue had been joined and the cause heard

upon appellee's motion for substitution. In this procedure there was no reversible error.

It is therefore ordered that the order of the court below be, and is hereby affirmed.